UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL LARDO, on behalf of himself
and all others similarly situated,

                                Case No.:

                Plaintiff,

     -against-

                               **CLASS ACTION**
BUILDING SERVICE 32BJ PENSION FUND;        **COMPLAINT**
 TRUSTEES OF THE BUILDING SERVICE
32BJ PENSION FUND, as Plan Administrator;
Trustees Hector Figueroa, Larry Engelstein,
Kevin Doyle, Kyle Bragg, Howard I. Rothschild,
Charles C. Dorego, John C. Santora, Fred Ward;
and John Doe Trustees 1-10,

                Defendants.
-------------------------------------------------------------------x

      Plaintiff, MICHAEL LARDO, individually and on behalf of all others similarly situated,

by and through his undersigned attorneys, alleges the following as and for his Class Action

Complaint:

## I.  INTRODUCTION

      1.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on his own behalf

and on behalf of all similarly situated participants in the Building Service 32 BJ Pension Fund

against Defendants the BUILDING SERVICE 32BJ PENSION FUND ("the Pension Fund") and

the TRUSTEES OF THE BUILDING SERVICE 32BJ PENSION FUND ("the Trustees"), as

Plan Administrator, pursuant to the Employee Retirement Income Security Act ("ERISA")

section 502(a)(1)(B), 29 U.S.C. §§ 1132(a)(1)(B), for denying them disability retirement benefits

to which they are entitled under the terms of the Pension Fund's Pension Plan (the "Plan") and

against the Trustees and Hector Figueroa, Larry Engelstein, Kevin Doyle, Kyle Bragg, Howard I.

Rothschild, Charles C. Dorego, John C. Santora, Fred Ward, and John Doe Trustees 1-10 (collectively, ("the Individuals Defendants") pursuant to ERISA section 404, 29 U.S.C. §§ 1104, for breach of fiduciary duty.  Plaintiff seeks relief on behalf of all members of the Class in the form of awarding of disability retirement benefits, and restitution and/or surcharge to make them whole in the form of retroactive reimbursement of or reinstatement for disability retirement benefits that should have been awarded previously but for Defendants' unlawful denial of such benefits and fiduciary breaches.

## II.  JURISDICTION

2.      Jurisdiction of this Court to adjudicate Plaintiff's claims exists pursuant to ERISA 502(e)(1), 29 U.S.C. § 1132(e)(1), and under 28 U.S.C. § 1331(a) because Plaintiff's claims are brought under the federal statute 29 U.S.C. § 1132(a)(1)(B).  Jurisdiction is also appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. § 1132(e) confers jurisdiction upon the District Courts of the United States where, as here, the claims relate to an "employee pension benefit plan" as that is defined within 29 U.S.C. § 1001 *et seq*.

3.      This Court has personal jurisdiction over the Defendants pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.  VENUE

4.      Venue in this action lies in the Southern District of New York (the "District") pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District, and Defendants have contacts within the District sufficient to subject them to personal jurisdiction.

5.      Venue in this action also lies in the District pursuant to ERISA, 29 U.S.C. § 1132(e)(2) based on where the fiduciary breaches took place, where the Defendants reside or

may be found, and because one of the Plaintiff and the class members earned and accrued pension benefits while employed here.

## IV.  **PARTIES**

6.     Plaintiff is a citizen of the United States, and a resident of the State of New York. Plaintiff is a participant in the Pension Fund within the meaning of ERISA, 29 U.S.C. § 1002(7), and has been at all relevant times.

7.     Defendant Building Service 32BJ Pension Fund is an employee pension benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(2).  Its principal office is located at 25 West 18th Street, New York, New York 10011-4676.

8.     Defendants Trustees of the Building Service 32BJ Pension Fund are the Plan Administrator of the Building Service 32BJ Pension Fund, within the meaning of ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i).  Defendants Trustees of the Building Service 32BJ Pension Fund are Plan fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21A) and ERISA § 404, 29 U.S.C. § 1104; and the "named fiduciaries" of the Employees Plan with the authority and control to manage the operation and administration of the Employees Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).  The Board of Trustees' offices are also located at 25 West 18th Street, New York, New York 10011-4676.

9.     The Board of Trustees includes the following individuals during the Class Period, who are collectively referred to herein as the "Individual Defendants":  "Union Trustees" Hector Figueroa, Larry Engelstein, Kevin Doyle, and Kyle Bragg; "Employer Trustees," Howard I. Rothschild, Charles C. Dorego, John C. Santora, and Fred Ward; and John Does 1-10, who are current and/or former members of the Board of Trustees whose identities are currently unknown to Plaintiff and who participated in the decision and breaches herein.

## CLASS ACTION ALLEGATIONS

10.     Plaintiff bring this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of the following class of persons situated (the "Class"):

> All participants and their beneficiaries who were denied a disability pension
> between the years 2015 to the present because their Social Security Disability
> Notice of Award did not indicate a review in 5 or more years.

11.     This action is properly maintainable as a class action because:

12.     Numerosity.  The Class is large in number; the exact number and identities of all

Class members are currently unknown to Plaintiff, but are known to Defendants.  The number of

Class members, who are individuals affected by the decisions and breaches are the subject of this

litigation, is believed to be at least one hundred or more.  Moreover, given the multiemployer

nature of the Fund, the members of the Class are so numerous and so geographically dispersed

across the New York/Westchester/Connecticut Metropolitan area that joinder of all Class members

is impracticable.

13.     Commonality.  There are questions of law or fact common to all members of the

Class concerning exclusively Defendants' actions and entail consideration of Fund and ERISA

provisions uniformly applicable to all Class members.  Resolution of these questions will not

require individual inquiry into the actions or circumstances of individual Fund participants.  These

common questions of law or fact center upon:

> i.      whether Plaintiff and the Class were unlawfully denied disability
> retirement benefits;
>
> ii.     whether Defendants breached their fiduciary duties;

4

        iii.     whether the Plaintiff and other Class members were injured by such breaches;

        iv.     whether the Plaintiff and other Class members are entitled to appropriate make-whole relief, restitution, and/or surcharge, and the proper measure thereof.

14.     Typicality.  Plaintiff is a member of the Class as defined above.  Plaintiff and the other class members were affected by the same decisions and breaches, and they assert the same claims and legal theories under the same provisions of ERISA and the regulations promulgated thereunder that all Class members possess.

15.     Adequacy.  Plaintiff will fairly and adequately protect the interests of the absent members of the Class.  Because Plaintiff's claims are typical of those of absent members of the Class, Plaintiff has every incentive to vigorously pursue those claims on behalf of absent Class members, and Plaintiff's interests coincide with, and are not antagonistic to, those of the Class. Moreover, Plaintiff is represented by counsel experienced in ERISA and complex class action litigation.

16.     Rule 23(b)(3) Requirements.  A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein because joinder of all members is impracticable.  Furthermore, because the relief awarded to individual members of the Class may be relatively small, the expense and burden of individual litigation makes it virtually impossible for Class members to redress the wrongs done to them.  The likelihood of individual Class members prosecuting separate claims is remote; questions of law or fact common to class members predominate over any questions affecting only individual members, and there are unlikely to be significant difficulties in managing the class action.

# V.  STATEMENT OF FACTS

*Plaintiff's Employment History*

17.     From approximately 2002 to 2014, Plaintiff worked as a building services handyman for Hyde Park Owners Corporation.

18.     At all relevant times, Plaintiff was a member of Local 32BJ and represented for purposes of collective bargaining by Local 32BJ of the Service Employees International Union ("Local 32BJ").

19.     At all relevant times, Plaintiff was a covered employee under the Pension Fund.

20.     At all relevant times, Hyde Park Owners Corporation was a participating employer in Local 32BJ's multiemployer benefits funds, including the Defendant Pension Fund.

*Plaintiff's Disability*

21.     In December 2014, while employed by Hyde Park Owners Corporation, Plaintiff contracted the flu and became severely ill.

22.     He was subsequently placed in a medically induced coma.

23.     Plaintiff developed and was ultimately diagnosed with brain stem encephalitis, chronic inflammatory demyelinating polyneuropathy (CIDP), Guillain-Barre Syndrome, peripheral neuropathy, and other disabling conditions.

24.     On or around December 18, 2014, as a result of his various medical conditions, Plaintiff became unable to work.  Due to his disabling conditions, he was unable to return to work after December 17, 2014.

25.     As of the time he stopped working, Plaintiff had 12 years of service and 144 service credits toward a pension.

*Plaintiff's Application for Disability-Related Benefits from the Local 32BJ Benefits Funds*

26.    The Building Service 32BJ Benefits Funds (the "Benefits Funds") is an umbrella organization responsible for administering benefits to Local 32 BJ members through the Defendant Pension Fund and the Building Service 32BJ Health Fund, among other benefit funds.

27.    On or about April 22, 2015, Plaintiff also applied to the Building Service 32BJ Health Fund for extended health coverage.

28.    The Extended Health Coverage, or Fund-Paid Health Extension, provides Fund-paid health insurance coverage for up to thirty (30) months.

29.    On or about April 22, 2015, Plaintiff also applied to the Building Service 32BJ Health Fund for long-term disability ("LTD") benefits.

30.    The LTD benefits from the Fund are in the fixed amount of $250 per month.

*Plaintiff's Application for a Disability Pension*

31.    On April 22, 2015, Plaintiff applied to the Defendant Pension Fund for a disability pension.

32.    A disability pension is separate and apart from LTD benefits, and there is no prohibition on receiving both.

33.    Based upon the terms of the Plan and the fact that Plaintiff has 144 service credits, the amount of Plaintiff's disability pension would be approximately $500 per month.

34.    Plaintiff's date of birth is March 5, 1977.  He was only 37 years old at the time he became disabled in December 2014 and only 38 at the time he applied for a disability pension in April 2015.

35.    If Plaintiff is not awarded a disability pension, he would not be entitled to any pension from the Pension Fund until age 55, when he would be entitled to an Early Retirement

Pension (which would be significantly reduced in value from the Regular Pension to which he would be entitled at age 65).

36.    Accordingly, if Plaintiff is not awarded a disability pension, he would not be eligible to receive any pension benefits from the Fund until he turns 55 in the year 2032, when he could receive a reduced Early Retirement Pension.

*Relevant Provisions of the Pension Plan*

37.    Section 4.08 of the Official Text of the Pension Plan, regarding Disability Pension Eligibility, provides:

> "A participant may Retire with a Disability Pension if he meets all of the following requirements:
> (a) he is permanently and totally disabled (as defined in Section 4.10);
> (b) he has at least 120 months of Service Credits; and
> (c) he became permanently and totally disabled while worked in Covered Employment."

38.    Section 4.10 of the Official Text of the Pension Plan, regarding Permanent and Total Disability Defined, provides:

> "(a) With respect to applications first submitted by a Participant before August 1, 2010, a Participant shall be deemed totally and permanently disabled if, on the basis of medical evidence satisfactory to the Trustees, he is found to have become, while working in Covered Employment, totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit. The Trustees or their authorized delegate(s) shall determine whether the Participant is totally and permanently disabled, when he became totally and permanently disabled, and whether he is entitled to a Disability Pension hereunder, in their sole and absolute discretion as provided in Section 7.06, based upon information submitted.  If a Participant first applies for a Disability Pension more than nine months after the last day he working Covered Employment, it shall be presumed that the Participant did not become totally and permanently disabled while working in Covered Employment, as required pursuant to this Section 4.10(a), and therefore, subject to the following sentence, the Participant shall not be eligible for a Disability Pension.  The Participant may, however, overcome this presumption by providing clear and convincing evidence that he became totally and permanently disabled while he was working in Covered Employment."

(b) "With respect to applications first submitted by a Participant on or after August 1, 2010, a participant shall be deemed totally and permanently disabled only under the following circumstances:

    (i)    the Participant presents to the Trustees a certification of permanent disability benefit award from the Social Security Administration showing the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment;

    (ii)    the Trustees or their authorized delegate(s) determine, in their sole and absolute discretion as provided in Section 7.06, based upon information submitted, that the Participant became totally and permanently disabled within the meaning of Section 4.10(a) before August 1, 2010 while working in Covered Employment (taking into account the presumption described in that subsection); or

    (iii)    in the case of a Participant who cannot satisfy on or more of the requirements to receive a disability benefit award from the Social Security Administration for reasons unrelated to the Participant's medical or mental condition, the Trustees or their authorized delegate(s) determine, in their sole and absolute discretion as provided in Section 7.06, based upon information submitted, that the Participant became totally and permanently disabled within the meaning of Section 4.10(a) while working in Covered Employment (taking into account the presumption described in that subsection)."

39.    Section 4.09 of the Official Text of the Pension Plan, regarding Disability Pension Amount, provides:

"The monthly amount of the Disability Pension is equal to 82% of the Regular Pension or Reduced Pension to which the Participant would be entitled based upon the number of months of earned Service Credits the Participant has at the time of the disability."

40.    The currently published Summary Plan Description states the following regarding Disability Pension eligibility:

Disability Pension

You are eligible for a Disability Pension if you have at least 120 months (ten years) of Service Credit and you become totally and permanently disabled while working in Covered Employment. There is a six-month waiting period between the date when you first stop working due to total and permanent disability and the date when your Disability Pension can begin. If your application is received more than nine months after you stop working in Covered Employment, your Disability Pension will not commence before the first day of the month after your application is

received by the Board. If you were part of the Window Cleaners Union Local No. 2 Pension Plan, different rules may apply. (See Appendix A on pages 53–57.) You are considered totally and permanently disabled if you submit to the Board a Social Security Administration Disability Notice of Award [1] showing that you are totally and permanently disabled and that your disability was found to have commenced while you were working in Covered Employment. The Social Security Administration classifies your disability as total and permanent if it sets your review for continuing eligibility for payments no less frequently than once every seven years, but no more frequently than once every five years.

…

[Footnote] 1 If you cannot satisfy one or more of the requirements to receive a disability benefit award from the Social Security Administration for reasons unrelated to your medical or mental condition, you may qualify for a Disability Pension if the Board (or the Board's designee(s)) determines that you became totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit while you were working in Covered Employment, on the basis of medical evidence that you submit that is satisfactory to the Board (or the Board's designee(s)).

41.    The Summary Plan Description states the following:

This booklet is only a brief summary of the most important provisions of the Plan. Your rights to benefits will be governed by the official rules and regulations of the Plan, as interpreted by official action of the Board of Trustees (the "Board"). Nothing in this summary will modify or change the official rules and regulations of the Plan. If there is any conflict between the terms of the official rules and regulations of the Plan and this booklet, the official rules and regulations will control.

*May 12, 2015 Response from the 32BJ Benefit Funds*

42.    By letter dated May 12, 2015, the Benefits Funds informed Plaintiff that he had been approved for Extended Health Coverage (Fund Paid Health Extension), he had been approved for Long-Term Disability benefits, and his application for a disability pension had been denied.

43.    The May 12, 2015 letter stated, with regard to Plaintiff's application for Disability Pension,

"The Pension Plan provides that in order to be eligible for a Disability Pension you must have become totally and permanently disabled while working in covered employment and have at least 120 months (10 years) of service credits. Total and permanent disability is established by submitting a Social Security

Disability Notice of Award which shows that your disability began while you were working in Covered Employment.
Although our records indicate you have more than 120 months of service credits, you have failed to provide a Social Security Disability Notice of Award letter. Accordingly, your application for a Disability Pension is denied.
In order to perfect your claim for Disability Pension, you would need to submit a Social Security Disability Notice of Award which shows that your disability was permanent while you were working in Covered Employment."

*Plaintiff's Social Security Disability Award*

44.    Plaintiff also applied with the Social Security Administration ("SSA") for Social Security Disability Income ("SSDI").

45.    On June 27, 2015, the SSA sent an award letter to Plaintiff informing him that it found he "became disabled under our rules on December 18, 2014" and would start receiving benefits in June 2015.

46.    The June 27, 2015 SSA award letter further stated: "We decided that you are disabled under our rules.  But, this decision must be reviewed once every 3 years.  We will send you a letter before we start the review.  Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled."

47.    Shortly after receipt of the June 27, 2015 SSA award letter, Plaintiff forwarded that award letter to the Defendant Pension Fund.

*July 20, 2015 Letter from the Benefits Funds*

48.    By letter to Plaintiff, dated July 20, 2015, the Benefits Funds acknowledged receipt of the June 27, 2015 SSA award letter and rendered decisions on his pending applications with the Defendant Pension Fund and the Health Fund.   The letter stated,  "We have received your Social Security Disability Notice Award to perfect your claim for Long Term Disabiilty (LTD)

11

benefits, Extended Health Coverage from the Building Service 32BJ Health Fund (Health Fund) and Disability Pension from the Building Service 32 BJ Pension Fund (Pension Fund)."

49.     First, the Benefits Funds informed Plaintiff that he was eligible for extended health coverage.  The letter informed Plaintiff that "you may continue to be eligible for up to 30 months of health coverage (Fund Paid Health Extension) provided you are unable to work and are receiving (or are approved to receive) one of the following disability benefits: statutory short-term disability, Worker's Compensation, LTD under this plan, or a Building Service 32BJ Pension Fund Disability Pension."  The letter stated that "Since you are eligible for Funds disability benefits, you and your eligible dependents are eligible for extended health insurance coverage ... effective December 18, 2014."

50.     Second, the Benefits Funds informed Plaintiff that he was eligible for LTD benefits because he had become totally disabled while working in covered employment.  The letter stated, "The Building Service 32BJ Health Fund (Plan) provides that in order to be eligible for LTD benefits you must have become totally disabled while working in covered employment.  You have been approved for continuation of LTD benefits and [*sic*] will terminate June 30, 2018.  In order to continue benefits beyond June 30, 2018, you will need to submit a Social Security Disability Notice of Award letter approving your disability beyond June 30, 2018.  Upon receipt, your application will be reevaluated for disability benefits."

51.     Third, the Benefits Funds informed Plaintiff that he was not eligible for a disability pension.  The letter stated,

> The Pension Plan provides that in order to be eligible for a Disability Pension you must have become totally and permanently disabled while working in covered employment and have at least 120 months (10 years) of service credits.  Total and permanent disability is established by submitting a Social Security Disability Notice of Award which shows that your disability began while you were working in Covered Employment.

The Social Security Administration will review your continuing eligibility for payments at least once every 3 years, if your disability is not considered permanent.  The Social Security Administration deems your disability permanent if it sets review of your continuing eligibility for payments once every 5 to 7 years.  Their notice to you about the review of your case tells you when the review will be conducted.

Your Social Security Disability Notice of Award dated June 27, 2015 provides on page 4 under the section *Things to Remember for the Future*, that "We decided that you are disabled under our rules.  But this decision must be reviewed once every 3 years."  The Notice of Award establishes that you are disabled but your disability is not considered permanent.

In order to perfect your claim for Disability Pension, you would need to submit a Social Security Disability Notice of Award which shows that your disability is permanent.  A Social Security Disability Notice of Award which indicates a review in 5 or more years would indicate that Social Security determined your disability to be permanent.

### *May 1, 2018 and June 19, 2018 Letters from the Health Fund*

52.     On May 1, 2018, the Health Fund sent Plaintiff a letter stating the following:

According to our records, your Long Term Disability (LTD) benefits will end on June 30, 2018.  Enclosed is a copy of your original determination letter for your reference.

If you are unable to return to work on or before the date above because of this disability, you will need to submit a Social Security Disability Notice of Award approving your disability beyond June 30, 2018.  Failure to re-cert within 30 days of this notice will result in the termination of your LTD benefits effective June 30, 2018.

53.     In May or June 2018, Plaintiff submitted to the Funds a Social Security Administration Social Security Benefit Planning Query (BPQY) letter.

54.     On June 19, 2018, the Benefits Funds sent Plaintiff a letter informing him that his LTD benefits were approved for continuation based upon the Benefits Funds' receipt and review of Plaintiff's Social Security Administration Social Security Benefit Planning Query (BPQY) letter.

*Plaintiff's July 2018 Submissions to Perfect His Disability Pension Claim*

55.     On July 11, 2018, in a further attempt to perfect his application for a disability

pension, Plaintiff submitted to the Pension Fund an additional copy of his June 27, 2015 SSA

Award letter.

56.     By letter dated July 19, 2018, the SSA notified Plaintiff of his continued eligibility

for SSDI, without requiring a medical review, stating:  "THIS IS AN AWARD LETTER, SSA

IS NOT REVIEWING MR. LARDO FOR A MEDICAL REVIEW."  (emphasis in original).

57.     On July 30, 2018, Plaintiff submitted to the Pension Fund, in a further attempt to

perfect his application for a disability pension, the July 19, 2018 SSA letter.

*October 2018 Responses from the Benefits Funds*

58.     On October 12, 2018, the Benefits Funds sent Plaintiff a letter stating the

following:

> We have received your Social Security Administration letter to perfect your claim
> for Disability Pension from the Building Service 32 BJ Pension Fund (Pension
> Fund).
>
> Please be advised that the information received does not perfect your claim for
> Disability Pension.
>
> The Social Security Administration deems your disability not permanent if it sets
> review of your continuing eligibility for payments at least once every 3 years.
> The Social Security Administration deems your disability permanent if it sets
> review of your continuing eligibility for payments once every 5 to 7 years.  Their
> notice to you about the review of your case tells you when the review will be
> conducted.
>
> Your Social Security Disability Notice of Award dated June 27, 2015 provides on
> page 4 under the section *Things to Remember for the Future*, that "We decided
> that you are disabled under our rules.  But, this decision must be reviewed once
> every 3 years."  The Notice of Award established that you are disabled but your
> disability is not considered permanent.
>
> In order to perfect your claim for Disability Pension, you would need to submit a
> Social Security Disability Notice of Award which shows that your disability is

14

permanent.  A Social Security Disability Notice of Award which indicates a review in 5 or more years would indicate that Social Security determined your disability to be permanent.

59.    On October 16, 2018, the Benefits Funds sent Plaintiff a new letter that was titled "AMENDED LETTER – Please disregard letter dated 10/12/18."  This October 16, 2018 letter stated, the following:

> We have received your Social Security Administration letter to perfect your claim for Disability Pension from the Building Service 32 BJ Pension Fund (Pension Fund).
>
> Please be advised that the information received does not perfect your claim for Disability Pension.  The Social Security Administration letter dated July 19, 2018 indicates that "SSA is not reviewing Mr. Lardo for a medical review."  It does not show that your disability is permanent.  You would need to submit a Social Security Disability Notice of Award that shows you became disabled while you were working in Covered Employment and your disability was permanent.  Please see attached copy of decision letter.

*Plaintiff's October 2018 Submissions of SSA Documents to Perfect His Disability Pension Claim*

60.    On or about October 22, 2018, in a further attempt to perfect his application for a disability pension, Plaintiff submitted three additional SSA documents to the Benefits Funds.

61.    First, Plaintiff submitted a letter from the SSA, dated October 22, 2018, stating, "You asked us for information from your record.  The information that you requested is shown below.  If you want anyone else to have this information, you may send them this letter."  The letter confirmed the amount of Plaintiff's SSDI benefits.  The letter also stated, "THE SOCIAL SECURITY ADMINISTRATION DOES NOT MAKE DETERMINATIONS REGARDING 'PERMANENT DISABILITY.'"  (emphasis in original).

62.    Second, Plaintiff submitted a chart document dated October 22, 2018, which was entitled, "Benefits Planning Query (BPQY) – Confidential Social Security Data."

Under the column for Social Security Disability Insurance (SSDI), the chart stated that his "Type of Benefit" was "Disabled Worker", and his "Current Status" was "Current Pay." The chart also confirmed his date of disability as 12/18/2014, his date of entitlement as June 2015, and the amounts of his disability benefits. Under the heading "Medical Reviews," the chart stated that his "Next Medical Review" was "Unknown" and his "Medical Re-exam Cycle" was "Unknown."

63.    Third, Plaintiff submitted a letter from the SSA, dated October 22, 2018, stating, "You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter." The letter also stated, "Mr. Michael Lardo was found disabled due to nervous system disorder and peripheral neuropathy effective 12/18/2014."

64.    Notwithstanding that its October 16, 2018 letter (and prior letters) had invited the submission of additional documentation by Plaintiff to perfect his claim for a disability pension, the Pension Fund failed to respond to the additional documentation submitted by Plaintiff on or about October 22, 2018.

*2019 Letters Between Plaintiff's Counsel and the Pension Fund*

65.    On August 8, 2019, Plaintiff's counsel submitted a letter to the Pension Fund on behalf of Plaintiff and another potential claimant. The letter stated in part:

> Based upon the documents and information provided to us, it is unclear where Mr. Lardo stands with regard to his administrative claims and appeals process with the Fund. … However, for the reasons stated below, in lieu of proceeding immediately to a lawsuit, we request that the Fund reopen both of their appeals, extend the statutes of limitations for filing lawsuits, and provide us with all of the documents related to the Fund's determinations, pursuant to ERISA, 29 U.S.C. § 1024, so that we may either submit supplemental information or come to a mutually agreeable resolution of these claims.
> …

16

Based on the information above, it appears that Mr. Lardo … has a claim against the Plan under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for failure to provide him with disability retirement benefits in violation of the terms of the Plan. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under an ERISA plan, or to clarify his rights to future benefits under the terms of a plan.

66.   On August 16, 2019, the Fund sent a letter to Plaintiff's counsel stating the following:

We received your letter dated August 8, 2019 regarding Michael Lardo's (Participant) denied application for a disability pension benefit from the Building Service 32 BJ Pension Fund (Pension Fund).

Disability Pension
The Pension Fund provides that in order to be eligible for a disability pension, a Participant must have become totally and permanently disabled while working in covered employment and have at least 120 months (10 years) of service credits. Disability, and the date it occurred, is established by submitting a Social Security Disability Notice of Award.

Specifically, the Plan provides that a participant shall be deemed totally and permanently disabled if the Participant presents to the Trustees a certification of permanent disability benefit award from the Social Security Administration showing that the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment.

The Social Security Administration deems a disability permanent if it sets review of continuing eligibility for payments once every 5 to 7 years.  See 20 Code of Federal Regulations section 416.990(d), enclosed.

Appeal
The Plan's appeal procedures provide that if a Participant's application (claim) for a disability pension benefit is denied, in whole, or in part, Participant (or Participant's authorized representative) may appeal in writing to the Board of Trustee's Appeals Committee.  An appeal must be made within 180 days from date of claim determination notice.  Information regarding the appeals process is contained in the claim decision letter under the section titled "How to Get More Information or to Appeal This Decision" as well as the Plan's Summary Plan Description (copy enclosed).

Pension Fund records reflect, Mr. Lardo's claim for disability pension was denied on July 20, 2015.  There is no record that Mr. Lardo appealed the denial within 180 days of July 20, 2015.

Lawsuit
The Plan provides that no participant claiming benefits may obtain judicial review of a denial of benefits unless the person claiming the benefits has followed the procedures for review by the Appeals Committee and the lawsuit is filed no more than 3 years after the date on which the Appeals Committee issued its decision on the request for review.  Mr. Lardo did not follow the Plan's procedures for review as he did not appeal the denial of a disability pension within 180 days of the claim decision date of July 20, 2015.

Extensions of Time
The Pension Fund declines to extend Participant's time to appeal.  In addition, the Pension Fund declines to extend the 3 year state of limitations within which a lawsuit may be filed."

Request for documents
Enclosed is a copy of the Pension Plan Summary Plan Description as well as 20 Code of Federal Regulations section 416.990.  In order for the Pension Fund to release Participant specific correspondence, please have Mr. Lardo complete the enclosed Release of Information Form.

67.    On September 18, 2019, Plaintiff's counsel submitted a letter to the Pension Fund

stating the following:

As you are aware, we represent Michael Lardo with regard to his claim for disability retirement benefits. We write in response to your August 16, 2019 letter, in which you stated, "In order for the Pension Fund to release specific correspondence, please have Mr. Lardo complete the enclosed Release of Information Form."

Please find enclosed a completed and signed Release of Information Form. We request that the Fund provide us with all documents related to the Fund's determination regarding Mr. Lardo's claim for disability retirement benefits, all documents relied upon by the Fund in making its determination, and all correspondence between Mr. Lardo and fund regarding his claims for disability retirement benefits, Long-Term disability benefits, and Extended Health Coverage/Fund-paid COBRA benefits.

68.     On October 11, 2019, Plaintiff's counsel wrote a letter to the Pension Fund, in response to its August 16, 2019 letter,

69.     First, Plaintiff's counsel's October 11, 2019 letter noted that "The Fund's August 16, 2019 letter failed to address any of the facts or arguments raised in our August 8, 2019 letter regarding why Mr. Lardo should be entitled to a disability pension and why the Fund's denial was arbitrary and capricious."

70.     Second, Plaintiff's counsel's October 11, 2019 letter also argued that by considering and responding substantively to the documentation that Mr. Lardo submitted, but not raising any argument or defense of untimeliness, the Pension Fund's October 16, 2018 letter waived the Pension Fund's timeliness and administrative exhaustion defenses.

71.     Third, Plaintiff's counsel's October 11, 2019 letter also argued that if this matter proceeds to litigation, Plaintiff will seek to have all of the documents submitted by Mr. Lardo, including those submitted on or about October 22, 2018, included in the administrative record and considered by the Court, and the Pension Fund should be precluded from asserting that such submissions are not part of the administrative record, because the Pension Fund invited Plaintiff to submit additional information and documentation (even though the administrative appeal deadline and lawsuit deadline had already passed).

72.     Fourth, Plaintiff's counsel's October 11, 2019 letter also argued that the Pension Fund's July 20, 2015 and October 16, 2018 letters did not meet the procedural requirements of ERISA or ERISA's disability claims regulations.

73.     Fifth, Plaintiff's counsel's October 11, 2019 letter also argued that that the Pension Fund's July 20, 2015 and October 16, 2018 letters did not adequately communicate to Plaintiff that his claim for disability retirement was finally and unequivocally denied, such his time to

appeal and the statute of limitations did not begin to run.  Neither the Pension Fund's July 20, 2015 letter nor its October 16, 2018 letter cited to a specific plan provision on which the determination was allegedly based, which was a violation of ERISA's claims regulations and invalidates the determination to deny benefits.

74.     Sixth, Plaintiff's counsel's October 11, 2019 letter also stated that "in lieu of us proceeding immediately to a lawsuit (in which we would raise waiver, equitable tolling, and the other arguments discussed above), we request that the Fund reopen Mr. Lardo's claim/appeal, extend the statutes of limitations for filing lawsuits, and consider the facts and arguments raised in this letter and the letter submitted on August 8, 2019, and so that we may either submit supplemental information or attempt to come to a mutually agreeable resolution of these claims."

75.     On October 25, 2019, the Pension Fund sent a letter to Plaintiff's counsel stating the following:

> We received your letter dated October 11, 2019 regarding Michael Lardo's (Participant) denied application for a disability pension from the Building Service 32 BJ Pension Fund (Pension Fund).
>
> Release of Participant Specific Information
> In order for the Pension Fund to release Participant specific correspondence, please have Mr. Lardo complete the previously provided enclosed Release of Information Form.
>
> Disability Pension
> The Pension Fund provides that in order to be eligible for a disability pension, a Participant must have become totally and permanently disabled while working in covered employment and have at least 120 months (10 years) of service credits. Disability, and the date it occurred, is established by submitting a Social Security Disability Notice of Award.
>
> A participant shall be deemed totally and permanently disabled if the Participant presents to the Trustees a certification of permanent disability benefit award from the Social Security Administration showing (1) the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment, and (2) the disability as of that date was deemed permanent.

The Social Security Administration deems a disability permanent if it sets review of continuing eligibility for payments once every 5 to 7 years.  It deems the disability not permanent if it sets the review for continued eligibility for payments at least once every 3 years.  See 20 Code of Federal Regulations section 416.990(d), which was previously sent to you.

The Pension Fund declines to extend Participant's time to appeal and to extend the 3 year state of limitations within which a lawsuit may be filed.

We trust this addresses your concerns.

76.     On or about October 31, 2019, the Benefit Funds received Plaintiff's completed and signed Release of Information Form, which was originally submitted to the Funds on September 18, 2019.

77.     On November 4, 2019, the Benefits Funds sent to Plaintiff's Counsel Plaintiff's disability application file, the Pension Fund Plan document with amendments in effect at the time Plaintiff left covered employment, the Pension Fund's Agreement and Declaration of Trust with amendments, and the Building Service 32BJ Health Fund Summary Plan Description with Summary of Material Modifications in effect at the time Plaintiff was determined eligible for health extension and Long Term Disability benefits.

## VI.  FIRST CAUSE OF ACTION

### (Denial of Benefits, Pursuant to ERISA § 502(a)(1)(B),

### against the Plan and Plan Administrator)

78.     Plaintiff and the Class repeat and reallege the allegations contained in the foregoing paragraphs of the Complaint as if fully set forth herein.

79.      ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a participant to bring suit to recover benefits due to him or her under the terms of a plan.

21

80.     Pursuant to the Plan's claims filing procedure, Plaintiff submitted a claim for employee benefits, pursuant to ERISA § 503, 29 U.S.C. § 1103.

81.     Plaintiff made various attempts to perfect his claim for benefits by providing additional information to satisfy the purported requirements of the Plan.

82.     Plaintiff and the Class met all of the plan requirements under Sections 4.08 of the Pension Plan for eligibility for a disability pension.

83.     Section 4.08 of the Pension Plan, regarding Disability Pension Eligibility, provides:

> "A participant may Retire with a Disability Pension if he meets all of the following requirements:
> (a)     he is permanently and totally disabled (as defined in Section 4.10);
> (b)     he has at least 120 months of Service Credits; and
> (c)     he became permanently and totally disabled while worked in Covered Employment."

84.     Plaintiff met the requirement of Section 4.08(b) of having at least 120 months (10 years) in service credits, because he has 12 years of service and 144 service credits.

85.     Plaintiff met the requirements of Section 4.08(a) and (c) of becoming totally and permanently disabled while working in covered employment in that he provided a Social Security Disability Notice of Award showing that his disability began in December 2014, which was when he was still working, and he provided other medical and SSA documentation confirming that he is totally and permanently disabled.

86.     Also, it is clear that Plaintiff was totally and permanently disabled because 32BJ granted him LTD benefits and continues to re-approve him for LTD benefits.

87.     Despite the fact that they met the requirements for a disability pension under the plan, Plaintiff and the Class were denied disability pensions by the Pension Fund.

88.     Defendants failed to comply with the terms of the Plan when they denied Plaintiff and the Class' disability pension benefits in violation of ERISA, 29 U.S.C. § 1132 (a)(1)(B), and Defendants' failure to comply with the terms of the Plan was arbitrary and capricious.

89.     Moreover, Plaintiff submitted a letter from the Social Security Administration dated July 19, 2018, stating that "THIS IS AN AWARD LETTER.  SSA IS NOT REVIEWING MR. LARDO FOR A MEDICAL REVIEW."

90.     Plaintiff also submitted a letter from SSA dated October 22, 2018, stating, "THE SOCIAL SECURITY ADMINISTRATION DOES NOT MAKE DETERMINATIONS REGARDING 'PERMANENT DISABILITY.'".

91.     Plaintiff also submitted a chart dated October 22, 2018 showing that he was not scheduled for any medical reviews.

92.     In addition, it has been 5 years since Plaintiff was awarded SSA disability benefits, and he has not been subject to any reviews or denials.

93.     Defendants acted arbitrarily and capriciously when they insisted that Plaintiff have a Social Security Disability Award letter that determined that he was totally and permanently disabled, even after he provided a letter from the Social Security Administration from October 2018 confirming that the Social Security Administration does not make determinations regarding permanent disability.

94.     Defendants also acted arbitrarily and capriciously in relying on the Social Security Administration regulation, 20 Code of Federal Regulations section 416.990(d), that they claim means the Social Security Administration deems a disability permanent if it sets review of continuing eligibility for payments once every 5 to 7 years, even though that regulation was last amended in 2006 and Plaintiff provided an October 2018 letter from the Social Security

Administration confirming that the Social Security Administration does not make determinations regarding permanent disability.

95.     Defendants also acted arbitrarily and capriciously when they insisted that Plaintiff have a Social Security Disability Award letter that sets review of continuing eligibility for payments once every 5 to 7 years, even though that requirement is only in the Summary Plan Description and not in the plan document, and the Summary Plan Description confirms that the plan document controls.

96.     Defendants also acted arbitrarily and capriciously when they insisted that Plaintiff have a Social Security Disability Award letter that sets review of continuing eligibility for payments once every 5 to 7 years, even after he provided letters from the Social Security Administration from October 2018 stating that it was not reviewing him for a medical review and a document confirming that he was not scheduled for a medical review.

97.     Defendants also acted arbitrarily and capriciously when they failed to respond to the documents that Plaintiff submitted in October 2018 in an attempt to perfect his claim for disability pension benefits.

98.     The Defendants have waived any requirements regarding timeliness and exhaustion of the Plan's claims and review procedures under ERISA § 503, 29 U.S.C. § 1103.

99.     The Pension Fund has also waived any the statute of limitations defense.

100.     By the acts and omissions set forth herein, Defendants have violated and continue to violate the terms of the Plan and ERISA.

101.     As a result, Plaintiff and the Class have suffered a denial of his pension benefits, and he seeks reinstatement/recoupment of his pension benefits, restitution of benefits wrongfully withheld, and with interest and his reasonable attorneys' fees.

### VII.    SECOND CAUSE OF ACTION

**(Breach of Fiduciary Duty, in Violation of ERISA § 404, Pursuant to ERISA 502(a)(3),
Against the Board of Trustees and the Individual Defendants,
Pleaded in the Alternative)**

102.    Plaintiff and the Class repeat and reallege the allegations contained in the foregoing paragraphs the Complaint as if fully set forth herein.

103.    The Trustees are fiduciaries of the Pension Plan as defined by ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercised discretionary authority or control of the management of the Plan or exercised discretionary authority or control respecting management or disposition of assets and had discretionary authority or responsibility in the administration of the Plan.

104.    Pursuant to ERISA Section 404(a), 29 U.S.C. § 1104(a), as Plan fiduciaries, the Trustees are required to exercise skill, care, prudence, and diligence in administering the Plan, and are responsible for administering the Plan solely in the interest of Plan participants and beneficiaries.

105.    Defendants the Pension Fund and the Trustees (as Plan Administrator) are named herein because in their absence complete relief cannot be accorded to Plaintiff and the Class.

106.    The Pension Plan plan document states that, to be eligible for a disability pension, a participant must be

> "permanently and totally disabled while working in Covered Employment" and "the participant shall be deemed totally and permanently disabled … [when] the Participant presents to the Trustees a certification of permanent disability benefit award from the Social Security Administration showing the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment.".

Section 4.08 and 4.10(b)(i) of the Official Text of the Pension Plan.

107.    The Summary Plan Description states in part:

You are considered totally and permanently disabled if you submit to the Board a Social Security Administration Disability Notice of Award [1] showing that you are totally and permanently disabled and that your disability was found to have commenced while you were working in Covered Employment. The Social Security Administration classifies your disability as total and permanent if it sets your review for continuing eligibility for payments no less frequently than once every seven years, but no more frequently than once every five years.

108.    The Summary Plan Description also states in part:

Your rights to benefits will be governed by the official rules and regulations of the Plan, as interpreted by official action of the Board of Trustees (the "Board"). Nothing in this summary will modify or change the official rules and regulations of the Plan. If there is any conflict between the terms of the official rules and regulations of the Plan and this booklet, the official rules and regulations will control.

109.    The requirement stated in the SPD that, in order to establish that a participant is permanently and totally disabled for purposes of being eligible for a disability pension, a participant must "submit to the Board a Social Security Administration Disability Notice of Award" that "classifies your disability as total and permanent [in that ] it sets your review for continuing eligibility for payments no less frequently than once every seven years, but no more frequently than once every five years" is an interpretation of the eligibility requirements for a disability pension which are established in the Official Text of the Pension Plan at Sections 4.08 and 4.10(b)(i).

110.    This interpretation in the SPD by the Trustees of the eligibility requirements for a disability pension which are established in the Official Text of the Pension Plan at Sections 4.08 and 4.10(b)(i), and Trustees' reliance upon those interpretations to deny disability pension benefits to Plaintiff and other similarly situated participants constitute breaches by the Trustees to discharge their duties with respect to the plan "solely in the interest of the participants and beneficiaries and for the exclusive purpose of  providing benefits to participants and their beneficiaries", and "in

accordance with the documents and instruments governing the plan…", as required by ERISA sections 404(a)(1)(A)(i) and 404(a)(1)(D).

111.     By failing to act in accordance with the documents and instructions governing the Plan, Defendants breached the fiduciary duties they owed the Plaintiff and members of the class, in violation of ERISA section 404(a); 29 U.S.C. § 1104(a).

112.     In addition, the refusal of the Trustees on August 16, 2019 to accept the letter from the Social Security Administration, dated October 22, 2018, provided to them by Plaintiff, which stated "The Social Security Administration does not make determinations regarding permanent disability" constitutes a fiduciary breach by the Trustees.

113.     Such action of refusing to acknowledge the position of the Social Security Administration regarding permanent disability determinations stated on October 22, 2018, notwithstanding the regulations promulgated by it years before at 20 C.F.R. § 416.990(d) constitutes a breach by the Trustees of their duty to discharge their duties with respect to the plan "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries", as required by ERISA section 404(a)(1)(A)(i)

114.     The Trustees' fiduciary breaches unlawfully prevented Plaintiff and all other similarly situated participants from obtaining disability pension benefits.

115.     Plaintiff and the Class therefore seek appropriate make-whole relief, restitution and/or surcharge to compensate them for losses suffered as a result of Defendants' breach of fiduciary duties owed to them and members of the class, pursuant to 29 U.S.C. § 1132(a)(3).  As a result of Defendants' fiduciary breaches, Plaintiff and Class have suffered a denial of disability retirement benefits.  Plaintiff and the Class should be afforded equitable restitution in the form of

retroactive reimbursement of the amount those unpaid disability pension benefits, plus retroactive interest and his reasonable attorneys' fees.  Plaintiff and the Class further seek injunctive relief ordering Defendants to provide disability pension benefits.  In addition, Plaintiff and the Class seek future pension benefits properly calculated according to the terms of the Plan.

## VIII.  RELIEF

Plaintiff respectfully prays that this Court:

### ON THE FIRST CAUSE OF ACTION

A.     Declare Defendants' conduct herein to be in violation of the Plaintiff's rights as secured by ERISA, 29 U.S.C. § 1132(a)(1)(B);

B.     Award Plaintiff and the Class the full amount of disability pension benefits to which each is entitled and any amounts of his pension benefits wrongfully withheld, under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B);

C.     Award pre-judgment and post-judgment interest on the amount recouped pursuant to 29 U.S.C. § 1132(g)(1); and

D.     Award Plaintiff reasonable attorney's fees and costs incurred in the prosecution of this action pursuant to ERISA, 29 U.S.C. §1132(g)(1).

### ON THE SECOND CAUSE OF ACTION

E.     Declare Defendants conduct herein to be in violation of the Plaintiff's rights as secured by ERISA sections 404 and 502(a)(3).

F.     Order Defendants to provide appropriate make-whole relief, restitution and/or surcharge to the Plaintiff and members of the Class to compensate them for losses suffered as a result of Plaintiff's breach of fiduciary duties owed to them.

G.      Award Plaintiff and the Class such equitable relief to which they are entitled pursuant to 29 U.S.C. § 1132(a)(3);

H.      Award Plaintiff and the Class disgorgement of funds in the possession of Defendants based on its unjust enrichment in an amount equal to the value of the pension benefits Plaintiff would have received, and the resumption of future pension benefits.

I.      Order formulation of a constructive trust with respect to the above referenced funds so that proper restitution may be made to Plaintiff and the Class.

J.      Order Declaratory relief determining Plaintiff and the Class' future rights to pension benefits.

K.      Award interest on all amounts awarded pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

L.      Award Plaintiff reasonable attorney's fees and costs incurred in the prosecution of this action.

## ON ALL CLAIMS

M.      Such other and further relief as this Court may deem just and proper.


Dated:    White Plains, New York          **FRUMKIN & HUNTER LAW PC**
          July 1, 2020

                                          By: /s/ William D. Frumkin
                                              William D. Frumkin, Esq.
                                              Elizabeth Hunter, Esq.
                                              Jordan M. Kaplan, Esq.
                                              *Attorneys for Plaintiff*
                                              1025 Westchester Avenue, Suite 309
                                              White Plains, New York 10604
                                              ehunter@frumkinhunter.com
                                              wfrumkin@frumkinhunter.com
                                              (914) 468-6096