UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                           :

MICHAEL LARDO,                               :

                             :

                 Plaintiff,              :

                             :             20 Civ. 5047 (JPC)

       -v-                        :

                             :               OPINION

BUILDING SERVICE 32BJ PENSION FUND, *et al.*,  :       AND ORDER

                             :

                 Defendants.       :

                             :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

    Defendant Building Service 32BJ Pension Fund (the "Pension Fund") denied Plaintiff Michael Lardo a disability pension because he lacked documentation from the Social Security Administration ("SSA") reflecting a permanent disability.  Lardo now brings this putative class action alleging that (1) the Pension Fund and the pension plan's administrator, Defendant Trustees of the Building Service 32BJ Pension Fund (the "Board of Trustees"), wrongfully denied his benefits claim and (2) the Board of Trustees and its individual Trustees breached the fiduciary duties they owed to Lardo and others similarly situated.  Both causes of action lie under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For reasons that follow, the Court grants Defendants' motion in part, denies it in part, and dismisses Lardo's wrongful denial of benefits claim.

## I. Background

    The following factual allegations are taken from the Amended Complaint, Dkt. 17 ("Am. Compl."), and any documents incorporated in the Amended Complaint by reference.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  In considering a motion to dismiss pursuant to

Rule 12(b)(6), the Court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

Lardo worked as a unionized handyman for Hyde Park Owners Corporation from 2002 to 2014.  Am. Compl. ¶ 17.  Members of his union, the Service Employees International Union Local 32BJ, receive benefits from the Building Service 32BJ Benefit Funds (the "Benefit Funds").  *Id.* ¶ 26.  The Benefit Funds include the Pension Fund, *id.* ¶ 31, which is governed by a pension plan (the "Pension Plan"), *id.* ¶ 1.

The Pension Plan allows certain workers who are "permanently and totally disabled" to retire with a disability pension.  *Id.* ¶ 37; Dkt. 78 ("Napier Decl."), Exh. B ("Plan") § 4.08.  Specifically, the Pension Plan provides that:

> A Participant may Retire with a Disability Pension if he meets all of the following requirements:
>
> (a) he is permanently and totally disabled (as defined in Section 4.10);
>
> (b) he has at least 120 months of Service Credits; and
>
> (c) he became permanently and totally disabled while working in the Covered Employment.

Plan § 4.08.  Section 4.10, in turn, provides that a "permanently and totally disab[ility]," as relevant here, can established by the participant presenting to the Pension Fund's Trustees "a certification of permanent disability benefit award from the Social Security Administration showing that the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment."  Plan § 4.10(b)(i); Am. Compl. ¶ 38.

The Pension Plan also sets out requirements for seeking judicial review of benefits determinations.  First, it gives claimants 180 days to appeal adverse benefits decisions to the Appeals Committee of the Board of Trustees.  Plan § 7.07(c).  Second, the Pension Plan requires

plaintiffs to seek judicial review of decisions within three years of the Appeals Committee's decision. *Id.* § 7.07(h).

In December 2014, Lardo developed a variety of serious health conditions that have left him unable to work since. Am. Compl. ¶¶ 21-24.  On April 22, 2015, Lardo applied to the Pension Fund for a disability pension. *Id.* ¶ 31.[1]  Lardo alleges that, based on his service credits, he would have been entitled to a disability pension of approximately $500 per month prior to an offset for his Social Security Disability benefits. *Id.* ¶ 33.  In a letter dated May 12, 2015, the Benefit Funds advised Lardo that his application for a disability pension had been denied because he failed to submit a notice of award letter from the SSA showing a permanent disability.  Napier Decl., Exh. E at 1-2; Am. Compl. ¶¶ 42-43.  That letter explained:

> The Pension Plan provides that in order to be eligible for a Disability Pension you must have become totally and permanently disabled while working in covered employment and have at least 120 months (10 years) of service credits.  Total and permanent disability is established by submitting a Social Security Disability Notice of Award which shows that your disability began while you were working in Covered Employment.
>
> Although our records indicate you have more than 120 months of service credits, you have failed to provide a Social Security Disability Notice of Award letter.  Accordingly, your application for a Disability Pension is denied.
>
> In order to perfect your claim for [a] Disability Pension, you would need to submit a Social Security Disability Notice of Award which shows that your disability was permanent while you were working in Covered Employment.

Napier Decl., Exh. E at 2; Am. Compl. ¶ 43; *see* Plan § 4.10(b)(i).

On June 27, 2015, following Lardo's application for Social Security Disability Income, the SSA sent Lardo an award letter informing him that the agency had found that he became disabled

---

[1] On the same date, Lardo also applied for long-term disability benefits and extended health coverage under the Building Service 32 BJ Health Fund.  Am. Compl. ¶¶ 27, 29.  In a May 12, 2015 letter, the Benefit Funds informed Lardo that he had been approved for those benefits and extended coverage.  Napier Decl., Exh. E; Am. Compl. ¶ 42.

under its rules on December 18, 2014 and that this determination would be reviewed every three years.  Napier Decl., Exh. F; Am. Compl. ¶¶ 45-46.  Lardo forwarded that award letter to the Pension Fund.  Am. Compl. ¶ 47.  On July 20, 2015, the Benefit Funds approved Lardo's continued receipt of extended health coverage and long-term disability benefits but denied him a disability pension.  Napier Decl., Exh. G; Am. Compl. ¶¶ 48-51.  That letter noted that the SSA "deems [Lardo's] disability permanent if it sets review of [Lardo's] continuing eligibility for payments once every 5 to 7 years," but the SSA advised that it would review Lardo's eligibility every three years.  Napier Decl., Exh. G at 2; Am. Compl. ¶ 51.  Thus, the Benefit Funds explained, the SSA's award letter "establishes that [Lardo is] disabled but [that Lardo's] disability is not considered permanent."  Napier Decl., Exh. G at 2; Am. Compl. ¶ 51.

Lardo renewed his efforts to obtain a disability pension in the summer of 2018.  On July 11, 2018, he sent the Pension Fund another copy of the SSA's June 27, 2015 award letter.  Am. Compl. ¶ 55; *see* Napier Decl., Exh. H.  Then, on July 30, 2018, Lardo forwarded to the Pension Fund a July 19, 2018 award letter from the SSA that notified him of his continued eligibility for Social Security Disability Income, but noted that the SSA was "NOT REVIEWING MR. LARDO FOR A MEDICAL REVIEW."  Am. Compl. ¶¶ 56, 57; *see* Napier Decl., Exh. I at 2.  These efforts too were unsuccessful.  On October 16, 2018, the Benefit Funds sent Lardo a letter, which amended a letter dated four days earlier, Am. Compl. ¶¶ 58-59, and once again denied his request for a disability pension because the SSA's July 19, 2018 letter "indicates that 'SSA is not reviewing Mr. Lardo for a medical review' [and] does not show that [Lardo's] disability is permanent," Napier Decl., Exh. J at 1; Am. Compl. ¶ 59.  The October 16, 2018 letter further instructed Lardo that he "would need to submit a Social Security Disability Notice of Award that shows [Lardo] became

disabled while [Lardo] w[as] working in Covered Employment and [Lardo's] disability was permanent."  Napier Decl., Exh. J at 1; Am. Compl. ¶ 59.

On October 22, 2018, Lardo submitted additional documents from the SSA to the Benefit Funds.  Am. Compl. ¶ 60.  One was a letter from the SSA, also dated October 22, 2018, which confirmed the amount of Lardo's Social Security Disability Income benefits and stated that "THE SOCIAL SECURITY ADMINISTRATION DOES NOT MAKE DETERMINATIONS REGARDING 'PERMANENT DISABILITY.'"  Id. ¶ 61.  Lardo alleges that the SSA's October 22, 2018 letter "expressly contradict[s]" the SSA regulation, 20 C.F.R. § 416.990(d), upon which the Pension Fund and the Trustees relied in denying him a disability pension.  Id. ¶¶ 64-65.  Lardo submitted another document from the SSA that indicated that Lardo was not scheduled for any medical reviews.  Id. ¶ 62.

On August 16, 2019, in response to a letter from Lardo's counsel threatening litigation, the Benefit Funds claimed that Lardo failed to comply with the Pension Plan's 180-day deadline for appeals and declined to extend the Pension Plan's statute of limitations for seeking judicial review.  Napier Decl., Exh. L; Am. Compl. ¶¶ 67-68.  On October 25, 2019, after further letters from Lardo's counsel, the Benefit Funds mailed Lardo's counsel another letter that, among other things, again "decline[d] to extend [Lardo's] time to appeal and to extend the 3 year state [sic] of limitations within which a lawsuit may be filed."  Napier Decl., Exh. N; Am. Compl. ¶ 77.

On July 1, 2020, Lardo filed his original Complaint.  Dkt. 1.  The case was reassigned from the Honorable Alison J. Nathan to the undersigned on October 19, 2020.  After Defendants moved to dismiss or for summary judgment on November 2, 2020, Dkt. 62, Lardo filed the Amended Complaint on November 23, 2020, Dkt. 64.  In light of the filing of the Amended Complaint, this Court denied the November 2, 2020 motion as moot on December 11, 2020.  Dkt. 75.

5

In the Amended Complaint, Lardo purports to bring claims on his own behalf and on behalf of similarly situated participants in the Pension Plan.  Am. Compl. ¶ 1.[2]  He pleads two causes of action.   First, Lardo alleges improper denial of benefits against the Pension Fund and its administrator, the Board of Trustees,[3] pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Am. Compl. ¶¶ 82-105.  For this, he "seeks relief on behalf of all members of the Class in the form of . . . disability retirement benefits that should have been awarded previously but for Defendants' unlawful denial."  *Id.* ¶ 1; *see id.* at 29.  Second, Lardo alleges a breach of fiduciary duty by the Board of Trustees and by the individual Trustee Defendants, pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Am. Compl. ¶ 106-15.  For this second cause of action, Lardo seeks a declaratory judgment, an injunction, a surcharge or restitution, a constructive trust, and "other equitable relief."  *Id.* at 29-30.

On December 23, 2020, Defendants again moved to dismiss or for summary judgment. Dkts. 76, 77 ("Motion"), Napier Decl.  Lardo opposed that motion on January 22, 2021, Dkt. 80 ("Opposition"), and Defendants filed their reply on February 12, 2021, Dkt. 84 ("Reply").

---

[2] The Amended Complaint alleges that the Class consists of "[a]ll participants and their beneficiaries who were denied a disability pension between the years 2015 to the present because their Social Security Disability Notice of Award did not indicate a review in 5 or more years." Am. Compl. ¶ 10.

[3] Lardo's first cause of action is styled as "against the Plan and the Plan Administrator." Am. Compl. at 23, VI.  The "Plan" is not named as a Defendant; the Pension Fund is.  *Id.* ¶ 7.  The Trustees of the Building Service 32BJ Pension Fund are also named as a Defendant and described as "the Plan Administrator" of the Fund.  *Id.* ¶ 8.  The Court therefore assumes that, for the first cause of action, the Defendants are the Pension Fund and the Board of Trustees.

## II.  Discussion

### A.  Legal Standards

To survive a motion to dismiss under Rule 12(b)(6),[4] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility does not require probability, but only "more than a sheer possibility."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[C]ourts may draw a reasonable inference of liability when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct.   The existence of other, competing inferences does not prevent the plaintiff's desired inference from being unreasonable unless at least one of those . . . rises to the level of an 'obvious alternative explanation.'"  *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*, 709 F.3d 109, 121 (2d Cir. 2013).

When a complaint makes a "clear, definite, and substantial reference" to a document, rather than a "limited quotation," the Court may consider it as incorporated by reference when judging a motion to dismiss.  *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).  Thus, in resolving Defendants' motion, the Court relies on not only the Amended Complaint, but the Pension Plan and Lardo's correspondences with the Benefit Funds, the Pension Fund, and the SSA, all of which are specifically referenced in the Amended Complaint.

---

[4] While Defendants style their motion as one to dismiss or for summary judgment, Defendants did not include a statement of material facts as required by Local Civil Rule 56.1.  Because of that deficiency, and because the Court may consider all documents relevant to their motion under Rule 12(b)(6) because those documents were referenced in the Amended Complaint, the Court treats the instant motion as one to dismiss.

## B.  Section 502(a)(1)(B)

Lardo's first cause of action alleges improper denial of benefits by the Pension Fund and its Board of Trustees.   Am. Compl. ¶¶ 82-105.   ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), allows participants in plans to sue for benefits owed to them under the plans' terms.  Defendants argue that Lardo's claim is barred because he did not exhaust the Pension Plan's appellate procedures and because he failed to file his claim in federal court within the Pension Plan's statute of limitations.  *See* Motion at 11-16.

"The courts of appeals . . . uniformly require[] that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013).  ERISA exhaustion requires plaintiffs to pursue "those administrative appeals provided for in the relevant plan or policy."  *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (citation omitted).  Under the Pension Plan, Lardo had 180 days to appeal the denial of pension benefits to the Appeals Committee of the Board of Trustees.  Plan § 7.07(c) ("Any claimant whose claim is denied may, within 180 days after receipt of written notice of such denial, request in writing a review by the Appeals Committee of the Board of Trustees . . . .").  Since Lardo's request was denied in July 2015, his time to file an internal appeal expired in early 2016, but he never sought review by the Appeals Committee.

Nor was this judicial action timely filed under the Pension Plan.  "The principle that contractual limitations periods ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan."  *Heimeshoff*, 571 U.S. at 108; *see also id.* (explaining that because section 502(a)(1)(B) claims depend on "the terms of the plan," courts must "enforc[e] plan terms as written," including limitations periods).  The only exceptions are for unreasonably short limitations periods and contrary controlling statutes.  *Id.* at 109.  The Pension Plan allowed for

judicial review only if (1) the person claiming benefits sought review from the Appeals Committee and the Appeals Committee denied the request or failed to render a decision within the time period prescribed under section 7.07(d), and (2) "[t]he lawsuit is filed no more than 3 years after" the Appeals Committee's denial of review or, in the case of no decision, the expiration of the time period under section 7.07(d).  Plan § 7.07(h).  Again, Lardo never sought review by the Appeals Committee.  Nor does he contend that the time limit under section 7.07(h) was unreasonable or contrary to law.  *Cf. Heimeshoff*, 571 U.S. at 109 (holding that a three-year statute of limitations for § 502(a)(1)(B) claims was reasonable).

Lardo contends, however, that the Pension Fund waived the deadlines for an internal appeal as well as for judicial review, because the Pension Fund failed to assert its exhaustion and statute of limitations defenses.  *See* Opposition at 21-24.  But the Benefit Funds' communications with Lardo tell a different story.

The Benefit Funds' letters of May 12, 2015, Napier Decl., Exh. E; July 20, 2015, *id.*, Exh. G; August 16, 2019, *id.*, Exh. L; and October 25, 2019, *id.*, Exh. N, all advised Lardo of both the deadline to pursue an administrative appeal and the deadline to seek judicial review.[5]  And the Funds' letter of May 1, 2018 enclosed the July 20, 2015 letter, which denied Lardo's request for a

---

[5] For instance, the May 12, 2015 and July 20, 2015 letters both advised, among other things:

> You or your authorized representative have the right to appeal this decision by filing a written appeal with the Appeals Committee of the Board of Trustees within 180 days of the date of this letter.  Your appeal should state clearly the reasons for your appeal and should include any additional documents, records, or other evidence that you believe should be considered. . . .  Should the Appeals Committee render an adverse decision, you have the right to bring a civil action in a court of law, challenging the decision, pursuant to section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA).  You must, however, first exhaust the Plan's appeal procedure before you can pursue an action in Court.  **No lawsuit may be started more than three years after the date on which the appeal was denied.**

Napier Decl., Exh. E at 3; *id.*, Exh. G at 3.

disability pension and noted these deadlines.  *See* Am. Compl. ¶ 52.  While the Funds' letter of October 16, 2018 did not mention the deadlines, that letter also attached the July 20, 2015 letter. *See* Napier Decl., Exh. J.  Lardo argues that waiver occurred nevertheless because, he claims, the October 16, 2018 letter deceptively requested more information and responded to the merits of his claim rather than merely asserting the exhaustion and statute of limitations defenses.  *See* Opposition at 22-24.

Traditional waiver rules apply to time limits for challenging decisions by ERISA plans. *See Heimeshoff*, 571 U.S. at 114-15.  Waiver requires "an intentional relinquishment or abandonment of a known right or privilege."  *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 510-11 (2d Cir. 2002).  There are no indicia of the Pension Fund's intent to relinquish or abandon the time limits set out in section 7.07 of the Plan.  To the contrary, the Benefit Funds' communications with Lardo repeatedly referenced the applicable deadlines. This is a far cry from a waiver of those deadlines.  *Cf. Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 380-82 (2d Cir. 2002) (holding that when an ERISA plan knew of but deliberately chose not to investigate or assert a defense, it was waived).  To treat the substantive responses to Lardo's inquiries as somehow waiving Defendants' otherwise applicable deadline defenses would "limit the usefulness of the administrative process" by discouraging "meaningful dialogue[]" from the Pension Fund.  *Chapman*, 288 F.3d at 511; *accord Ivanovic v. IBM Personal Pension Plan*, 47 F. Supp. 3d 163, 169 (E.D.N.Y. 2014) (explaining that a plan's offer to consider new information or reconsider its decision after a clear denial of benefits would not waive or toll a statute of limitations defense).

Because Lardo alleges that the Pension Fund deceived him into believing that he still had a potential claim, *see* Opposition at 22-25, the Court also evaluates his argument under the doctrine

of equitable tolling.  *See Heimeshoff*, 571 U.S. at 114-15; *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (explaining that deception can justify equitable tolling of ERISA deadlines).  But equitable tolling requires a plaintiff to be diligent and to lack knowledge of the accrual of a cause of action.  *See Veltri*, 393 F.3d at 326.   Since the Benefit Funds' letters repeatedly informed Lardo of the deadlines, he cannot show such diligence or a lack of knowledge.  *Cf. id.* at 232-24 (applying equitable tolling where the fund violated federal notice requirements).

## C.  Section 502(a)(3)

Lardo's second cause of action alleges a breach of fiduciary duty by the Pension Fund's Board of Trustees and by the individual Trustees.  Am. Compl. ¶¶ 106-15.  ERISA section 404, 29 U.S.C. § 1104, creates fiduciary duties of loyalty and care from an ERISA plan's trustees to the plan's participants and their beneficiaries.  Section 502(a)(3), 29 U.S.C. § 1132(a)(3), in turn, allows ERISA participants to seek equitable relief in response to violations of those fiduciary duties.[6]   A plaintiff alleging a breach of fiduciary duty under ERISA must show that: (1) the defendant is a fiduciary of the plan, (2) the defendant acted in its capacity as a fiduciary, and (3) the defendant breached a fiduciary duty.  *See Severstal Wheeling Inc. v. WPN Corp.*, 809 F. Supp. 2d 245, 254 (S.D.N.Y. 2011) (citation omitted).[7]

---

[6] Section 502(a)(3) provides:

A civil action may be brought –

* * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).

[7] The Plan's deadlines for internal appeals and seeking judicial review apply only to benefits claims, not to breach of fiduciary duties claims, *see* Plan § 7.07, and Defendants do not argue that Lardo's section 502(a)(3) claim is time-barred, *see* Motion at 21-24.

As discussed, the Pension Fund allows a participant to establish eligibility for a disability pension based on the SSA's determinations of permanent disability. *See* Plan §§ 4.08, 4.10(b)(i). According to 20 C.F.R. § 416.990(a), the SSA "conduct[s] continuing disability reviews" to ensure continued benefits eligibility. A "[p]ermanent impairment," under the SSA's regulation, is one for which "any medical improvement . . . is not expected . . . on the basis of [the SSA's] experience in administering the disability programs." 20 C.F.R. § 416.990(c). If a benefits claimant's "disability is considered permanent," SSA "review[s] . . . continuing eligibility no less frequently than every 7 years but no more frequently than once every 5 years." 20 C.F.R. § 416.990(d). As such, the Pension Fund considers participants to be permanently disabled—and thus entitled to a disability pension—if the SSA reviews their status no more than once every five years. *See* Am. Compl. ¶¶ 38, 49-51; Plan §§ 4.08, 4.10(b)(i).

Lardo's breach of fiduciary duty claim primarily stems from the response of the Board of Trustees after Lardo forwarded the SSA's October 22, 2018 letter. In that letter, the SSA stated that it "does not make determinations regarding 'permanent disability.'" *Id.* at ¶ 61 (capitalization removed). Lardo characterizes Defendants' reliance on the SSA's determination of permanent disability in deciding disability pension eligibility on one hand, and the SSA's statement in the October 22, 2018 letter that it does not make permanent disability determinations on the other, to be "a salient contradiction that directly impacts the administration of the [Pension] Plan and affects its participants and beneficiaries." *Id.* at 113. Lardo alleges that "[t]he Trustees breached their fiduciary duties to act solely in the interest of participants and beneficiaries as required by ERISA Section 404(a)(1) when they failed to investigate and respond to [this] salient contradiction." *Id.* According to Lardo, the failure to do so harmed him "and others similarly situated because the Trustees' independent determination of whether a participant is totally and permanently disabled

relies upon an outside agency (the SSA) that does not engage, or no longer engages, in making determinations regarding permanent disability." *Id.* ¶ 114.

Defendants' primary argument for dismissal of Lardo's breach of fiduciary duty claim under section 502(a)(3) is that the claim is redundant with his section 502(a)(1)(B) wrongful denial of benefits claim. *See* Motion at 21-23. Defendants argue that Lardo's section 502(a)(1)(B) claim "is predicated on precisely the same allegations" as his fiduciary breach claim, and Lardo cannot save that fiduciary claim by purporting to seek equitable relief. *Id*. at 23. But unlike Lardo's wrongful denial of benefits claim, his breach of fiduciary duty claim does not seek only declaratory and monetary relief. Am. Compl. at 29-30. In his second cause of action, Lardo seeks some equitable forms of relief, such as an injunction and a constructive trust. *Id*. "[A] private cause of action for breach of fiduciary duties under § 502(a)(3)" may exist even "when another potential remedy is available." *Frommert v. Conkright*, 433 F.3d 254, 272 (2d Cir. 2006) (citing *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89-90 (2d Cir. 2001)).[8] Indeed, section 502(a)(3) claims for breaches of fiduciary duties persist even after section 502(a)(1)(B) claims fail, as section 502(a)(3) provides a safety net for breaches for which other relief is not available under ERISA. *See Devlin*, 274 F.3d at 89 (citing *Varity Corp v. Howe.*, 516 U.S. 489, 512-15 (1996)); *see also*

---

[8] The cases cited by Defendants all involve plaintiffs who improperly brought section 502(a)(3) actions redundantly seeking only money damages, not equitable relief. *See Irvins v. Metropolitan Museum of Art*, No. 15 Civ. 5180 (RJS), 2016 WL 4508364, *4-5 (Aug. 26, 2016); *Wegmann v. Young Adult Inst.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, *5-6 (S.D.N.Y. Mar. 2, 2016) (distinguishing *Frommert* because the plaintiff sought only damages and did not allege a breach of fiduciary duty); *Levin v. Credit Suisse, Inc.*, No. 11 Civ. 5252 (RJS), 2013 WL 1296312, *6 (Mar. 19, 2013); *Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 433 (S.D.N.Y. 2005); *Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 487-88 (S.D.N.Y. 2004) (distinguishing *Devlin* because it allowed section 502(a)(3) claims "only as long as [they] seek[] equitable relief" and the plaintiff sought money damages).

*CIGNA Corp. v. Amara*, 563 U.S. 421, 438-39 (2011) (discussing the survival of section 502(a)(3) claims after the dismissal of section 502(a)(1)(B) claims).

If liability is eventually established, the Court must limit Lardo to "appropriate equitable relief." *See, e.g., Devlin*, 274 F.3d at 89; *Frommert*, 433 F.3d at 272; *CIGNA Corp.*, 563 U.S. at 439-45 (examining and broadening the limits of "appropriate equitable relief"). But at this stage, the Court cannot speculate about what relief, if any, ultimately will be ordered. *See New York State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (reversing a dismissal of a section 502(a)(3) fiduciary duty claim when it was too early to tell whether the section 502(a)(3) claim was a repackaged damages claim).

Turning to the merits of Lardo's pleading of this claim, there does not appear to be any dispute that the Board of Trustees and its individual Trustees were fiduciaries of the Pension Plan and, when considering Lardo's eligibility for a disability pension, were acting in their fiduciary capacities. *See Severstal Wheeling, Inc.*, 809 F. Supp. 2d at 254. The question is whether those Defendants breached that duty. *See id.* Viable claims of breaches of fiduciary duties have arisen in somewhat analogous contexts. In *Varity Corp.*, 516 U.S., the Supreme Court explained that intentional misrepresentations to plan participants violate the fiduciary duty of loyalty, *see id.* at 506. Misinterpretations of the terms of an ERISA plan have been found to support a conclusion that the plan's fiduciaries were not acting with the requisite loyalty and care. *See Chao v. Malkani*, 452 F.3d 290, 294-96 (4th Cir. 2006). And the failure to investigate whether plan practices harm participants' interests can breach a fiduciary duty. *See Liss v. Smith*, 991 F. Supp. 278, 290 (S.D.N.Y. 1998) (explaining that the failure to investigate a policy of not seeking delinquent contributions breached fiduciary duties). Notably, Defendants do not contend that their failure to

investigate an apparent inconsistency between a plan's requirements and the SSA's actual practices could not violate their fiduciary duties.  *See* Motion at 21-24.

Defendants' arguments challenging Lardo's breach of fiduciary duty claim on the merits are not persuasive, at least in the present posture.  Defendants argue that it was not imprudent for the Pension Fund to rely on the Pension Plan's terms to deny Lardo a pension, explaining that the Pension Fund "was obligated by its fiduciary obligations to adhere to the Pension Plan rules." Motion at 23.[9]  But the Pension Plan does not obligate the Trustees to require the specific form of proof of permanent disability from the SSA that they chose to require of Lardo.  *See* Am. Compl. ¶ 37.  And the Pension Plan includes two discretionary safety valves for participants without qualifying SSA documents, including one explicitly for participants "who cannot satisfy . . . requirements to receive a disability benefit award from [the SSA] for reasons unrelated to the Participant's . . . condition."  *Id.*  If in fact the SSA does not make permanent disability determinations, the Pension Plan does not require the Trustees to enforce the documentation requirement.  Defendants cannot claim that the Plan ties their hands.

Defendants also argue that the SSA's October 22, 2018 letter to Lardo and the regulation on which the Pension Fund relies do not actually contradict.  *See* Motion at 24.  Defendants maintain that while the SSA wrote that it "does not make *determinations* regarding 'permanent disability,'" Am. Compl. ¶ 61 (emphasis added), the regulation says that the cases of claimants

---

[9] In support, Defendants cite *Ocampo v. Building Service 32B-J Pension Fund*, 787 F.3d 683 (2d Cir. 2015), which appeared to involve the same Pension Plan that is at issue in this case. Motion at 23.  In *Ocampo*, the Second Circuit affirmed the district court's holding that the trustees did not act arbitrarily or capriciously in enforcing the requirement for a determination by the SSA of permanent disability, including that the SSA's review occur in not less than five years.  787 F.3d at 689-92.  But *Ocampo* involved only a claim of improper denial of benefits, not breach of fiduciary duties.  And more importantly, in *Ocampo*, there was no allegation that the SSA no longer makes the very determination that the Pension Plan provided would render a participant eligible for a disability pension.

with "disabilit[ies] *considered* permanent" are reviewed no more than once every five years, 20 C.F.R. § 416.990(d) (emphasis added). Defendants argue that both statements are true. *See* Reply at 6-7. According to Defendants, the SSA does not make *determinations* of permanent disability because it relies on the determinations of state agencies instead, *see* 20 C.F.R. § 416.903(a) ("State agencies make disability . . . determinations for the Commissioner for most people living in the State."), but the SSA *considers* certain claimants permanently disabled based on the state *determinations*. In Defendants' words, "if the state agency determines that medical improvement is not expected, *i.e.*, permanent, then the SSA's continuing disability review will be set every five to seven years." Reply at 7.

But the SSA's actual regulations are in some tension with Defendants' explanation. According to one regulation, the states determine *whether* and *when* applicants are disabled, but not the *permanence* of their disabilities, the relevant question in this case. *See* 20 C.F.R. § 416.903(c) (authorizing "State agencies and the Social Security Administration to make determinations about – (1) Whether you are disabled or blind; (2) The date your disability or blindness began; and (3) The date your disability or blindness stopped."). Moreover, it appears that the SSA, not the state, classifies disabilities as permanent for purposes of the review schedules that the Plan relies on. *See* 20 C.F.R. § 416.990(c), (d) (providing that the SSA considers a disability to be "permanent" for purposes of scheduling reviews based on its "experience in administering the disability programs" and possibly "[t]he interaction of the individual's age, impairment consequences and . . . attachment to the labor market"). And if the SSA, not the state, determines whether a disability is permanent, the SSA's insistence that it "does not make determinations regarding 'permanent disability'" is difficult to reconcile. Am. Compl. ¶ 61. To

be sure, some valid explanation may exist, but based on the face of the Amended Complaint, the existence of a breach is "more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss Lardo's section 502(a)(1)(3) claim and denies Defendants' motion to dismiss Lardo's section 503(a)(3) claim.  Because the Court concludes that oral argument in this case is unnecessary, Lardo's motion for oral argument is denied.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 76 and 81.

SO ORDERED.

Dated: September 14, 2021
       New York, New York

                                                          _____
                                                          JOHN P.  CRONAN
                                                          United States District Judge